## DETERMINATION AS TO WHETHER DEATH OCCURRED IN THE COURSE OF EMPLOYMENT.

Common Pleas Court of Hamilton County.

NELLIE PURNHAGEN v. THE INDUSTRIAL COMMISSION OF OHIO ET AL.

Decided, October Term, 1920.

*Workmens' Compensation—Slight Variance in Performance of a Single Duty—Not a Bar to Recovery for Accidental Death.*

Compensation will not be denied under the workmen's compensation act, on the ground that the decedent did not meet his death within the scope of his employment, where his digression from the usual method of procedure consisted in going to call upon a customer as a guest in an automobile instead of using the horse and delivery wagon with which he had been supplied by his employer.

*Frank H. Kunkel* and *Oliver G. Bailey* for plaintiff.

*Louis H. Capelle,* Prosecuting Attorney, *Albert Leeker,* Assistant Prosecuting Attorney, and *Benton S. Oppenheimer,* to defendants.

DIXON, J.

On October 24, 1918, Richard Purnhagen, an employee of the Jung Brewing Company, was killed in Cincinnati while riding in an automobile with one George Menges, who was also an employee of the said company; said automobile having skidded on the slippery street and crashed into the adjoining curb, causing said Purnhagen to be thrown to the roadway, whereby he sustained injuries resulting in his almost instant death.

Purnhagen's widow, Nellie Purnhagen, filed a claim for compensation with the Industrial Commission of Ohio, but the Commission denied her right to participate in the workmen's compensation fund upon the ground that her husband's death did not arise out of or in the course of his employment. From this decision Nellie Purnhagen appealed to this court, and the evi-

dence was heard by a jury. At the conclusion of all the evidence both sides moved for an instructed verdict and thereupon the case became automatically one for the court to decide.

The sole question in the case is whether or not Richard Prunhagen, the decedent, met his death while engaged in the course of his employment as an employee of the Jung Brewing Company. Counsel on both sides have each submitted a rather comprehensive synopsis of the evidence adduced at the trial, and a perusal of both statements discloses little, if any material difference in the analysis of the testimony. It is undisputed that the decedent, Richard Purnhagen, was at the time of his death, and had been for many years prior thereto, employed by the Jung Brewing Company as a solicitor and collector for draught beer, and that on the day he met his death it was his duty to call upon and make a collection from one, George Puls, a saloon keeper whose place of business was located in Madisonville, and who was both a draught beer and a bottle beer customer of the brewery. Toward noon on the day in question Purnhagen called at the saloon of Campbell & Ording, located on Madison road near Torrence ave., where the brewery sold bottled beer. and while there he received word over the telephone from one of the officials of the brewery, that Menges who delivered bottled beer for the brewery by horse and wagon, had neglected to supply this same George Puls at Madisonville, with bottled beer on the day previous, as it was his duty to do, and that Puls had sent in a complaint to the brewery. Menges was due to arrive at Campbell & Ording's saloon very shortly after Purnhagen received this message, and he decided to wait for him before going to Madisonville, some three or four miles further out, to collect from Puls. When Menges arrived at Campbell & Ording's saloon, he learned of Puls, complaint, and thereupon he and Purnhagen arranged with Campbell & Ording to allow Menges to have enough bottled beer from the supply which Campbell & Ording had on hand to tide Puls over until such time as the brewery could send him the amount desired. Instead of taking this beer out to Puls in his beer wagon, Menges claiming that his horses were too tired to make this long trip at the close of

their day's work, sent his team and wagon back to the brewery stables, secured his own automobile, put the boxes of bottled beer into the automobile, and together with Purnhagen and another person, went to the place of business of Puls in Madisonville. Here the bottled beer was delivered to Puls from the automobile, and Purnhagen made his collection, receiving from Puls a check which was found on his person after his death. After a short stay in Puls' place of business, Purnhagen started back to the city with Menges in the automobile over the only direct route that could be used for that purpose. Madisonville is in the extreme eastern part of Cincinnati, while the brewery is located in the middle west-end of the city, and Purnhagen's residence was in the extreme west-end on Price Hill. The automobile was wrecked and Purnhagen was killed about five o'clock in the evening, on Madison road near Vista avenue, a point in the return route over which it was necessary for Purnhagen to pass in the automobile regardless of whether he was returning to the brewery or going direct to his home.

Counsel for the Commission contend that inasmuch as the brewery had furnished Purnhagen with a horse and buggy for use in making his collections in the city of Cincinnati, and did not specifically authorize him to use an automobile for such purposes, that he could not under any circumstances ride in an automobile while engaged in his employers' business; and that because he did so under the circumstances of this case he grossly violated his duty to his employer and departed entirely from the course of his employment.

In this contention we can not concur; nor can we bring ourselves to believe that in the light of the construction that has been placed upon the Ohio workmen's compensation law by the various courts of this state, it is necessary that there should exist a reasonably anticipated causal connection or relationship between the injury and the employment before the provisions of the act will become operative in any specific case.

The reported cases in Ohio, many of which are found in the briefs submitted by counsel, and to which we are compelled to look for guidance in this case, do not warrant any such conclu-

sion. Such a construction if adopted generally, would in our judgment, practically nullify the humane purposes of the act and relegate the injured working man in Ohio to a position with respect to his legal rights, in which his chances of obtaining compensation would be only slightly better than they were under the uncertain rigors of the common law.

The course which our courts should pursue in cases involving a construction of our compensation act is clearly and definitely outlined by Nichols, C. J., in *Industrial Commission* v. *Pora,* 100 O. S., wherein he says:

"The real spirit of the act is to measurably banish technicality and to do away with the nicety of distinction so often observable in the law, and commands a liberal construction in favor of employees."

It is clearly apparent from the evidence adduced in the case at bar, that Purnhagen, the decedent, was something more than a mere draught beer solicitor and collector. He was a faithful and trusted employee who had been in the service of the brewery for many years; he was a sort of general outside man who looked after many matters of interest to his employers, and he appeared at all times to be eager and ready to render services of a business nature whenever and wherever he could; he was undoubtedly called upon at times to use, and did use his own judgment and discretion in transacting business for his employers, and was not in fact, nor was he expected to be a mere automaton, mechanically performing day after day, and week after week, the same unvarying kind of work. On the day he met his death he was due to call on George Puls in Madisonville, and make a collection from Puls, who was waiting for him and was ready to and did pay him when he came. What time he arrived in Madisonville was immaterial as he was not running on any particular schedule, and was not due to go there at any particular time. It is well known that men employed as beer collectors for breweries spend more or less time in the places of business of their customers, and that their employers are aware of this custom and for business reasons encourage it. We therefore believe that neither the length of time which Purnhagen spent in Campbell

& Ording's saloon, nor the fact that he might have gone to Madisonville earlier in the day by street car or otherwise, is in any wise germane to the merits of the plaintiff's claim. In any event he learned while in this saloon that George Puls, his customer in Madisonville and a patron of his employers, had been neglected the day before by another employee of the brewery, and had complained to the brewery of this treatment. What could be more natural under these circumstances than that a faithful employee such as Purnhagen undoubtedly was, should immediately become interested from the viewpoint of his employer, the brewery, in Puls prediciment. Puls was undoubtedly incensed because he was without an adequate supply of bottled beer, and Purnhagen was eager to satisfy him and remove any cause for dissatisfaction he might have against the brewery. Purnhagen's employer, because of its failure to make due delivery to him of what he needed; and this the more so because on that very afternoon it was Purnhagen's duty to call on Puls and collect for goods previously sold and delivered by the brewery.

To accomplish this two-fold purpose Purnhages elected to go to Madisonville in an automobile with the man whose primary duty it was to deliver the beer to Puls; and if his mission on this day had not ended so fatally he would in all probability have been commended by his employers for his alertness and enterprise in looking after their business welfare. In making use of the automobile Purnhagen did not adopt any uncommon or hazardous means of conveyance; on the contrary he selected what is today the most commonly used means for private carriage, asd in so doing we do not believe he placed himself outside the scope or course of his employment.

We therefore hold that his death occurred while he was returning from an errand on which he had gone in the line of his duty as an employee of the Jung Brewing Company, and while he was within both the scope and course of his employment, and that his dependants are entitled to compensation for his death in accordance with the provisions of the workmen's compensation act.